# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KEON BLACKSHEAR,                                    Case No. 1:11-cv-212

      Plaintiff,                                   Barrett, J.
                                                    Bowman, M.J.

    v.

CINCINNATI ADULT PAROLE AUTHORITY, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

Pursuant to local practice, this pro se prisoner civil rights case has been referred to the undersigned magistrate judge for initial consideration, and for a report and recommendation on any dispositive motions. See 28 U.S.C. §636(b)(2). As discussed below, I now recommend that Defendant Matulavich's pending motion for summary judgment (Doc. 21) be granted, that the motion of two unserved defendants (Doc. 34) also be granted, and that this case be dismissed.

## I. Factual and Procedural Background

On April 12, 2011, Plaintiff, currently incarcerated at the Toledo Correctional Institution, initiated this *pro se* civil rights case against multiple Defendants. The facts recounted herein are either taken from Plaintiff's complaint, or are uncontradicted and supported by evidence filed by Defendant Matulavich as exhibits in support of his pending motion. To the extent that any disputes exist, the facts have been construed in favor of the Plaintiff as the non-moving party.

Plaintiff has been admitted to the custody of the Ohio Department of Rehabilitation and Correction (ODRC) on four separate occasions for various crimes. (Doc. 21-2). On

October 1, 2009, Plaintiff was released on parole, under the supervision of the Ohio Adult Parole Authority (APA). (*Id*. at 2). Plaintiff was initially released to a halfway house in Cincinnati, Ohio, where he agreed to and signed Conditions of Supervision on October 5, 2009. (Doc. 21-4). Among those conditions were terms requiring Plaintiff: (1) to obey all federal, state, and local laws and ordinances; (2) to keep his parole officer informed of his place of residence and place of employment, and to obtain permission before changing either; (3) to follow all verbal or written orders of his supervising parole officer; (4) to not possess, use, or have under his control any illegal drugs or drug paraphernalia; (5) to report within one business day any arrest, citation or other violation of law, or contact with law enforcement officers; and (6) to not associate with anyone with a criminal background. (*Id*). In addition, Plaintiff expressly agreed "to a search, without warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time." (*Id.* at ¶9). The same provision included a Notice that under §2967.131 of the Ohio Revised Code, Officers of the APA "may conduct warrantless searches of your person, your place of residence...or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision." (*Id*.).

Plaintiff had multiple problems at the halfway house over the course of his stay there. In December 2009, he tested positive for alcohol and cocaine and also was reported to have stolen tobacco from another resident's locker. He was arrested but released back to the halfway house on a "Last Chance Behavioral Contract" on December 29, 2009. In January 2010, Plaintiff was arrested again for threatening kitchen staff and

attempting to bribe them for additional food; he was discharged from the halfway house the same day.  On January 15, 2010, Plaintiff was released from custody to reside at his mother's house.

On January 25, 2010, Plaintiff's parole officer filed a violation report that reflected Plaintiff's ongoing difficulties and failure to complete the halfway house program.  (Doc. 21-5).  Parole Officer David Matulavitch, a named Defendant herein, recommended that Plaintiff be required to complete out-patient substance abuse programming and mental health screening, as a result of his failure to complete the halfway house program.  (*Id*. at 9).  On February 8, 2010, Officer Matulavich learned that Plaintiff had an outstanding warrant for his arrest for Aggravated Burglary.  Plaintiff was initially arrested and incarcerated, but was released on February 16, 2010 based upon the victim's refusal to testify, with all charges dismissed.  However, as a result of those charges, Plaintiff was directed to have no contact with Esther Hawkins; a sanction that was not rescinded despite the dismissal of the charges.  (Doc. 21-6 at 5).

At an administrative parole hearing on March 1, 2010, Plaintiff admitted to all parole violation charges pending against him and the recommended additional conditions were imposed.  Plaintiff was also re-instructed to reside at an approved address and to report to his supervising officer as directed.  (Doc. 21-6 at 9).  On March 9, 2010, Plaintiff's mother confirmed that he was living with her.

On June 18, 2010, Defendant Matulavitch completed a second violation hearing report, which reflected additional violations of Plaintiff's conditions of supervision that occurred after his March 1 violation hearing. For example, on March 11, 2010, Defendant learned that Plaintiff had been arrested for driving without a license and other moving

violations that had occurred on February 2, 2010. Based on that arrest, Plaintiff missed his Chemical Dependency Assessment appointment, which was subsequently rescheduled for April 6, 2010. (Doc. 21-6 at 10).

On April 9, 2010, Defendant Matulavich went to Plaintiff's mother's house but found no one at home; therefore, he left an order instructing Plaintiff to report to the APA office to see him on April 26. Plaintiff reported to the APA office as directed on April 26, 2010, but left prior to seeing his parole officer. (Doc. 21-6 at 10). As a result of the missed appointment, on May 11, 2010, Defendant met with Plaintiff at his mother's house. Plaintiff indicated that he planned to meet with an APA physician that same day, and explained that he left APA offices early without waiting to see Defendant on April 26 because he needed to get to his class at Cincinnati State University. Plaintiff was ordered to report again to Defendant in two weeks, on May 25, 2010. (*Id.*).

On May 13, 2010, Defendant learned that Plaintiff had missed a May 4 follow-up appointment with the Chemical Dependency Specialist, and also had failed to show up for his scheduled appointment with the APA doctor on May 11, 2010. On May 25, 2010, Plaintiff failed to report to Officer Matulavich and failed to contact APA at all. On May 27, 2010, Defendant learned that Plaintiff had again encountered law enforcement over traffic charges (expired license and seat belt violations), which encounter was again unreported to APA. In addition, Officer Matulavich went to Plaintiff's mother's residence to locate him and spoke with a friend of Plaintiff's mother at that residence. (Doc. 21-6 at 11). The friend reported that Plaintiff had not actually been living at his mother's residence since his discharge from the halfway house in January 2010, but instead only visited occasionally. The friend informed Defendant that Plaintiff may be living at the Drake Motel in Reading,

Ohio with a person named Tony.

On June 1, 2010, Defendant learned that the vehicle Plaintiff was driving at the time of his recent traffic citations belonged to a person named Antony Wethington, who was a resident of Kentucky. (*Id.* at. 4). Based upon this fact and the history recently discovered by Defendant, including the fact that Plaintiff had failed to appear for several appointments, had failed to report contact with law enforcement, and was alleged not to be living at his reported address, Defendant listed Plaintiff as "unknown" on June 2, 2010 as to his whereabouts and activities. (*Id.* at 11).

On June 3, 2010, Defendant went to the Drake Motel and learned that although Plaintiff had stayed there for about a week with a woman identified through a photograph as Esther Hawkins, he had departed the week prior. On the same day Defendant went to the Sycamore Inn Motel, where Defendant learned that Plaintiff had been staying for the past week. According to Plaintiff, the Sycamore Inn Motel is located directly across the street from the APA's regional office. Defendant also learned that Plaintiff had paid rent for the upcoming week that morning. Defendant did not attempt to locate or confront Plaintiff at the time since he was working alone that day.

On June 4, Defendant returned to the Sycamore Inn Motel with two other officers. Staff confirmed that Plaintiff was still a resident in the room that was registered solely in Plaintiff's name, but a phone call went unanswered and no one answered the door when officers knocked. Ten minutes after the officers left, they received a phone call reporting that Plaintiff had been hiding outside in the bushes when officers arrived at his motel room, and that he had returned to his motel room after their departure. Defendant Matulavich and the other two officers returned to the motel and spoke with the caller, who reported

that Plaintiff had admitted to the caller that he was wanted for parole violations. By agreement of motel staff, a maintenance man unlocked Plaintiff's room for the officers. (Doc. 26-1 at 12).

Officers pushed the unlocked door open but encountered a barrier, as the dresser and bed had been placed in front of the door from the inside. Officer Matulavich identified himself, pushed through the barriers, and ordered Plaintiff to "[c]ome out if he was in the room." Plaintiff was hiding in the bathroom, and was ordered to appear and show his hands. Plaintiff complied and was arrested. Although Plaintiff denied the presence of any contraband, Officers detected odors in the room consistent with crack cocaine use and found a crack pipe under the bed. Plaintiff stated that he was sharing the room with Ester Hawkins, the girlfriend who Plaintiff had previously been forbidden from having contact with. (*Id*.). Ms. Hawkins was not present in the room. Plaintiff was transported to jail, where a urine drug screen was positive for cocaine. Plaintiff thereafter admitted cocaine use.

On June 24, 2010, Defendant obtained a statement from Plaintiff's mother, admitting that Plaintiff had not in fact been living with her at any time since his release from prison on October 1, 2009 or since his release from the halfway house in January 2010. Defendant recommended revocation of Plaintiff's parole based upon multiple violations of his conditions of release.

In the civil rights complaint filed in this Court under 42 U.S.C. §1983, Plaintiff alleges that his supervising parole officer, Defendant Matulavich, and two other parole officers initially identified only by first names "Kevin" and "Amanda," violated his Fourth Amendment rights and "privacy" rights when they entered and searched his motel room on June 4, 2010

6

without either an outstanding arrest warrant or a valid search warrant. Plaintiff alleges that he was never criminally charged for possession of drug paraphernalia, although there is no dispute that his parole was in fact revoked based upon violations of his conditions of release, subjecting him to his current period of incarceration.[1] Plaintiff seeks $50,000 in monetary damages against each Defendant based upon the alleged Fourth Amendment violations.

As this Court previously stated in dismissing many of Plaintiff's claims *sua sponte* on initial screening, Plaintiff "has no right to relief under 42 U.S.C. §1983 in connection with the revocation of his parole and subsequent imprisonment...." (Doc. 4 a t4). "In addition, to the extent plaintiff may be alleging that the Adult Parole Authority improperly considered evidence seized during an unlawful arrest and search, this claim lacks merit as the Fourth Amendment exclusionary rule does not apply to parole revocation proceedings." (Doc. 4 at 5).

Despite dismissing several claims, the Court determined that Plaintiff's Fourth Amendment claim against the three parole officers surpassed the relatively low non-frivolous, "initial screening" standard under 28 U.S.C. §1915(e), such that further development of that claim was required. (Doc. 4 at 5). Even so, the Court expressly noted that "the warrant and probable cause requirements of the Fourth Amendment generally do not apply to searches of parolees, probationers, or their residences." (Doc. 4 at 5, quoting *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008); *see also Samson v. California*,

---

[1] Plaintiff was most recently admitted to the custody of ODRC on July 1, 2010, and has a current listed prison term of eighteen months, set to expire on September 16, 2012. (*See* Doc. 21, citing www.drc.state.oh.us/OffenderSearch/Search.aspx).

547 U.S. 843 (2006)(permitting suspicionless searches of parolees); *United States v. Knights*, 534 U.S. 112 (2001)(upholding a warrantless search of a probationer's apartment based on reasonable suspicion and a probation condition requiring submission to search at any time). In short, despite expressed reservations about the limited possibilities for a "non-frivolous" claim, the Court permitted Plaintiff's complaint to proceed because the Court could not determine- at the screening stage -whether the claim fell within an exception to the general rule severely limiting the scope of Fourth Amendment protections for parolees. Nor could the Court determine upon initial screening "the degree to which [the search] intrudes upon an individual's privacy" as well as "the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* (quoting *Smith*, 526 F.3d at 308 (additional internal quotation omitted)).

Defendant Matulavich has now moved for summary judgment arguing that no exception to the general Fourth Amendment jurisprudence, concerning searches of a parolee, exists on the facts presented. (Doc. 21).

The other two parole officers, originally identified only by first names "Kevin" and "Amanda," have never been formally served with the complaint, due to Plaintiff's failure to provide identifying information to assist the United States Marshal in perfecting service. Through counsel, those unserved Defendants have made a limited appearance to seek dismissal for failure of service. (Doc. 34). In response to both defense motions, Plaintiff has filed a counter-motion for summary judgment, as well as a motion to amend his complaint to more properly identify the remaining two parole officers. (Doc. 27, 37). As discussed herein, Defendants' motions should be granted, and Plaintiff's motions should be denied.

8

## II. Analysis

## A. Summary Judgment Standard

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts - in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving

party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.,* 475 U.S. at 586-587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009)(citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

**B. Defendant's Arguments on Summary Judgment**

**1. Suit Against Defendant in his Official Capacity**

Plaintiff's complaint does not identify the capacity in which he is suing any of the Defendants. Plaintiff argues that under the "course of proceedings" test, Plaintiff's claims should be construed as against the Defendant *only* in his official capacity, because the complaint lists the address for Defendant Matulavich as the "A.P.A. Regional Office on

Reading Road in cincinnati, Ohio, and refers to the Defendant as "P.O. David," which suggests the title "Parole Officer."

To the extent that Plaintiff is attempting to sue Defendant Matulavich in his official capacity, Plaintiff's claims are deemed to be the equivalent of suit against the State of Ohio itself. *See Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989). The State of Ohio is immune to claims for monetary damages under the Eleventh Amendment of the United States Constitution. Thus, under the Eleventh Amendment, Defendant is absolutely immune from any suit brought against him in his official capacity for monetary damages. *See generally Cowan v. University of Louisville School of Medicine*, 900 F.3d 935, 940 (6th Cir. 1990); *Portentoso v. Kern,* 532 F. Supp.2d 920, 925 (N.D. Ohio 2008)(dismissing plaintiff's claims against the Ohio Adult Parole Authority and all individual defendant officers sued in their official capacities as barred by the Eleventh Amendment)*.*

**2. Suit Against Defendant in His Individual Capacity**

Defendant concedes that he raised the defense of qualified immunity in his Answer to the complaint, a defense that is available only to individuals sued in their individual capacities. To the extent that this Court construes Plaintiff's claims as having been brought against him in his individual capacity, however, Defendant argues that he is entitled to qualified immunity, because Plaintiff fails to demonstrate the violation of any constitutional right.

I agree that Plaintiff has failed to demonstrate the violation of any constitutional right. Absent the violation of a clearly established statutory or constitutional right, Defendant Matulavich, as well as the other two still-unserved parole officers, all are entitled to qualified immunity. *See generally Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

11

### 3. No Violation of Plaintiff's Fourth Amendment Rights

As previously noted, the "probable cause" and warrant requirements of the Fourth Amendment generally do not apply to searches of parolees, probationers, or their residences. *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008)(citing *Sampson v. California*, 547 U.S. 843, 857 (2006)(holding that "the Fourth Amendment...does not prohibit a police officer from conducting a suspicionless search of a parolee."); *see also United States v. Knights*, 534 U.S. 112 (2001)(holding that a warrantless search of a probationer's apartment, supported by reasonable suspicion and authorized by a condition of probation, was reasonable under the Fourth Amendment). Defendant argues that the facts and circumstances presented in this case require Plaintiff's claims to be dismissed and judgment entered in Defendant's favor.

Two separate bases for granting Defendant's motion exist on the facts presented. First, under *Samson* and its progeny, a "suspicionless" search of a parolee or his residence is *a fortiori* reasonable and does not violate the Fourth Amendment, absent evidence that the search was conducted for some clearly improper purpose, such as harassment. Whereas prior law suggested that a warrantless search might be justified only when "special needs" particular to probationers and parolees were present, *Samson* set forth an even broader "totality-of-the-circumstances" test for evaluating and upholding a suspicionless search of a parolee. *Wilson v. Collins*, 517 F.3d 421, 426 (6th Cir. 2008); *see also United States v. Lewis*, 672 F.Supp.2d 827, 834 (S.D. Ohio 2009)("it is not a constitutional violation for any peace officer to search a parolee, so long as the search is not merely to harass.")(quoting *United States v. Douds*, 2009 WL 2168828 at *9 (S.D. Ohio, July 21, 2009)("it is reasonable to conduct a suspicionless search of a parolee.").

In *Douds,* the court reasoned that the fact that Ohio law may provide greater protection, insofar as ORC §2967.131 restricts warrantless searches to circumstances when parole officers "have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision," does not mean that the Fourth Amendment provides the same protection. Rather, under the Fourth Amendment, "neither warrant and probable cause requirements apply nor does the reasonable suspicion standard found in Ohio Rev. Code §2967.131(C)" apply. *Id.*, at *9. Similarly, in *United States v. Smith,* 526 F.3d at 310, the Sixth Circuit interpreted *Samson* as putting to rest any question concerning the validity, under the Fourth Amendment, of a search based solely on a parolee's condition of release, rather than requiring any type of reasonable suspicion. "Imposing a reasonable suspicion requirement ...would give parolees greater opportunity to anticipate searches and conceal criminality." *Samson*, 547 U.S. at 854. Based upon the same reasoning, in this case Plaintiff cannot prove a violation of the Fourth Amendment (as opposed to state law)[2] even if he could prove that the search of the motel room was *not* based upon so much as a reasonable suspicion, but only upon his status as a parolee.

Even if a reviewing court were to disagree with the conclusion that the Fourth Amendment simply does not prohibit the type of suspicionless search that was conducted in this case, however, Defendant would be entitled to summary judgment because the search at issue here was based upon reasonable suspicion that Plaintiff had violated conditions of his release. Nearly two decades before *Samson*, in *Griffin v. Wisconsin*, 483 U.S. 868, 870 (1987), the Supreme Court held that a state statute that authorized a

---

[2]The specific condition of release to which Plaintiff agreed permitted "a search, without warrant, of my person, my motor vehicle, or my place of residence...at any time" - language that is much broader than the "reasonable suspicion" notice built into ORC §2967.131.

warrantless search of a probationer's home, subject only to a "reasonableness" requirement, was constitutional under the Fourth Amendment. As in *Griffin*, Ohio's statute governing searches of parolees and their premises has been upheld as constitutional. *See United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003). Thus, under the two-prong Fourth Amendment analysis first announced in *Griffin*, the only determination left for this Court to make is whether Defendant "had reasonable grounds to suspect that [the parolee]] was violating the terms and conditions of his parole." *Id.* A "reasonable suspicion" has been described as "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Herndon*, 501 F.3d 683, 691 (6th Cir. 2007)(quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)(internal quotation marks omitted).

On the facts presented, Officer Matulavich had reasonable suspicion to believe that Plaintiff had violated multiple terms and conditions of his parole. Defendant had knowledge that Plaintiff had missed his May 4 appointment with a Chemical Dependency Specialist, had failed to show for a May 11 appointment with an APA doctor, had missed his May 25 appointment with Defendant himself, had failed to contact APA at all on that date, and had encountered law enforcement and failed to report to Defendant traffic charges. In addition, while investigating Plaintiff's whereabouts, Defendant learned that Plaintiff had not been residing at his mother's residence as reported, but instead had been living at an unreported motel with an unknown person (named "Tony") who -based upon the motor vehicle check- resided in Kentucky. Prior to his arrival at the Sycamore Inn Motel, Defendant had confirmed Plaintiff's previous stay at the Drake Motel with a female, suspected to be Esther Hawkins, whom Plaintiff had been forbidden to contact. After learning that Plaintiff had paid upcoming rent and was still residing at the Sycamore Inn

Motel, Defendant learned from staff that Plaintiff had purposefully evaded contact with his parole officer by hiding in the bushes and subsequently barricading himself inside his motel room. "In the context of a probationary search condition, reasonable suspicion that the probationer has violated the terms of his probation is sufficient to justify a search." *Heath v. Brown*, 2012 WL 1067894 at *4 (March 29, 2012)(quoting *United States v. Becker*, 534 F.3d 952, 956 (8th Cir. 2008)). All of the information known to Defendant justified the warrantless entry and search of Plaintiff's motel room and seizure of his person, without running afoul of the Fourth Amendment. *Accord United States v. Davis*, 415 Fed. Appx. 709, 712 (6th Cir. 2011)(reasonable suspicion standard for search of residence satisfied, where parole officer received information that parolee was not complying with the conditions of parole because he was residing at a different address than reported); *United States v. Wright*, 332 Fed. Appx. 257, 259 (6th Cir. 2009)(holding that failure to complete substance abuse counseling, failure to submit urine tests, and failure to report encounters with law enforcement justified search of parolee's residence, because "litany of wrongdoing supplied ample reason to believe that searching [parolee's] home would reveal further parole violations."); *contrast United States v. Henry*, 429 F.3d 603, 611-613 (6th Cir. 2005)(holding that probation search not supported by "reasonable "suspicion, where officer suspected violation of change of address condition because probationer was absent on three occasions during the day, but officer left no indication he was trying to reach probationer, and had no evidence at all that probationer lived elsewhere or had violated any other condition).[3]

---

[3]Aside from being factually distinguishable, *United States v. Henry* was decided prior to *Samson*, when the issue of whether agreement to a broad search provision constitutes consent to a suspicionless search remained an "open question" in both the Supreme Court and the Sixth Circuit. *See id.*, 429 F.3d at

Plaintiff argues in opposition to summary judgment that his alleged change of address was not a violation of the terms and conditions of his release, because the Sycamore Inn Motel was "within the same area code as the Plaintiff's known address on Rossmore Avenue," which is "consistent" with his terms of release. (Doc. 26). Alternatively, Plaintiff suggests (with no citation to evidence) he was only "visiting" the Sycamore Inn Motel rather than residing there.[4] (Doc. 26 at 2). Plaintiff further argues that he was "accessible via telephone," such that his parole officer had no need to look for him. (Doc. 27 at 6). Plaintiff's arguments find no support in his written Conditions of Supervision, which require him to report his actual residence and any change of address, not merely a change in zip code.

Plaintiff argues that Defendant should not have arrested him without a warrant, and that the Defendant's entry into the motel room constituted an invasion of privacy that is "very questionable as to ...[Plaintiff's] 4th Amendment rights." (Doc. 26 at 3). Plaintiff suggests that the fact that Defendants did not file specific criminal charges against the Plaintiff as a result of the June 4 search confirms that they lacked evidence of criminal activity. In a construed reply memorandum (entitled as a "motion to strike Defendants'

---

614.

[4]Several pieces of evidence contradict this recent assertion, including several of the allegations in Plaintiff's complaint wherein he acknowledges being the only person in the room, and avows knowledge of the maintenance schedule that morning. As Defendant points out, even if this Court were to accept Plaintiff's unsupported assertion that he was a guest of someone else residing at the Sycamore Inn Motel, Defendant would still be entitled to summary judgment because, in general, a guest has no reasonable Fourth Amendment expectation of privacy when on the premises of another. *See Minnesota v. Carter*, 525 U.S. 83 (1998); *United States v. Trammell*, 52 Fed. Appx. 661, 664 (6th Cir. 2002).

Memorandum"),[5] Plaintiff asserts that at his adult parole hearing held on June 27, 2010, Hearing Officer Mike Sands dismissed some of the parole violations, including the charge that Plaintiff's address was "unknown" and/or that he had failed to notify his supervising officer of his change of address. Based upon the dismissal of those violations, Plaintiff contends that Defendants lacked reasonable suspicion to enter his motel room on June 4. On the other hand, Plaintiff freely admits that he was found guilty of violating conditions relating to his use of drugs (positive cocaine test), possession of drug paraphernalia (the crack pipe under the bed), and association with Esther Hawkins. (Doc. 30 at 3).

No case support or other authority requires an actual conviction at a subsequent revocation hearing in order to justify a warrantless search of a parolee's residence. To the extent that any articulable reason is required to justify the warrantless search of a parolee or his residence post-*Samson*, such searches are undoubtedly constitutional whenever an officer has a "reasonable suspicion" of a parole violation, regardless of whether the probationer or parolee is ultimately convicted of the violation. Likewise, no authority requires the filing of new criminal charges in order to justify a warrantless search, so long as the search is otherwise permitted by law.

Plaintiff contends that an issue of fact remains as to the "reasonableness" of Defendant's warrantless search and alleged invasion of privacy, such that this Court should deny summary judgment. However, Plaintiff has also filed his own motion for summary judgment, arguing that no genuine issue of material fact exists that Defendant had no open

---

[5] Defendant has filed a limited response to the extent that Plaintiff seeks to "strike" Defendant's response in opposition to Plaintiff's motion for summary judgment. As Defendant recognizes, the "motion to strike" is more properly construed as a reply memorandum in support of Plaintiff's motion for summary judgment. However, to the extent that Plaintiff actually intended to move to strike Defendant's response in opposition, the motion is without merit and will be denied by separate Order.

warrant for his arrest at the time that he conducted the search of Plaintiff's motel room. Plaintiff argues in his own motion that Defendant's actions violated his "rights of privacy," enforceable under the due process clause of the Fourteenth Amendment,[6] as well as his Fourth Amendment privacy interests. (Doc. 27). Regardless of the constitutional basis for Plaintiff's "right of privacy" claim, it is without merit because the search of the motel room and subsequent arrest of Plaintiff was clearly reasonable and well within *any* constitutional boundaries. *Accord, Heath v. Brown*, 2012 WL 1067894 at **6-7 (rejecting state law claim of invasion of privacy on grounds that search of probationer's home was not an "unreasonable intrusion" upon right of privacy under circumstances presented).

Defendant was permitted, under the express Conditions of Release, under Ohio law, and under the Fourth Amendment, to conduct a warrantless search based upon his personal knowledge of at least one parole violation, together with his reasonable belief that Plaintiff was committing or had committed other violations. In light of the foregoing analysis, Plaintiff's separate motion for summary judgment should be denied.

### C. Defendants' Motion to Dismiss Unserved Parole Officers and Plaintiff's Motion to Amend his Complaint

On June 28, 2012, Defendants' counsel made a limited appearance for the unserved Defendants, by filing a motion to dismiss on their behalf based upon Plaintiff's failure to perfect service under Rule 4(m), and in the alternative, for failure to prosecute under Rule 41(b).

---

[6]Plaintiff's reference to the Fourteenth Amendment arguably attempts to insert a new claim that was not part of his original complaint. The Fourteenth Amendment is not mentioned in Plaintiff's complaint at all. Although Plaintiff did allege a violation of due process in his original complaint, that claim failed to survive the initial screening analysis performed by Magistrate Judge Litkovitz under 28 U.S.C. §1915e. (Doc. 4 at 3-5).

The record reflects that this Court originally directed Plaintiff to complete summons forms and provide identifying information not later than June 24, 2011, through which the U.S. Marshals Service could attempt service. (Doc. 7). Thereafter, Plaintiff completed a summons form for David Matulavich, but did not provide identifying information for the other two parole officers other than "Kevin NLN (No Last Name)" and "Amanda (NLN)." (Doc. 9).

On February 1, 2012, Plaintiff sought discovery from Defendants, including identifying information for Defendants Kevin NLN and Amanda NLN. Defense counsel responded to the discovery request on March 8, 2012 by providing the full names of both parole officers, but also reported that Amanda NLN was no longer employed at the OAPA and/or the ODRC. Plaintiff did not request, and counsel did not provide, any forwarding or home address for Amanda. Defendant informed Plaintiff that the Defendant identified as Kevin NLN was actually a parole officer named Derek Leverette; Officer Leverette remains employed by OAPA.

On March 12, 2012, the Court entered a Memorandum Order that stated in part:

[I]t does not appear that Plaintiff complied with the Court's order of June 2, 2011 by providing sufficient identifying information, including last names, for the U.S. Marshal to perfect timely service on Defendants Amanda NLN and Kevin NLN. Neither Defendant has filed an answer to the complaint, and Defendant Matulavich expressly denied in his answer that service has been perfected on his two co-defendants.

(Doc. 20, citing Doc. 15).

Citing Rule 4(m) of the Federal Rules of Civil Procedure, which requires service to be perfected within 120 days after the complaint is filed, the Court expressly warned Plaintiff that "the Court proposes to dismiss the complaint against Defendants Kevin NLN

and Amanda NLN, without prejudice, due to Plaintiff's failure to comply with the Court's June 2, 2011 order and failure to effect timely service of process of the summons and complaint." (*Id.*). Therefore, the Court directed Plaintiff to "**SHOW CAUSE** in writing on or before **March 28, 2012** why the complaint should not be dismissed without prejudice, solely as to Defendants Kevin NLN and Amanda NLN, for failure of service of process against those two Defendants." (*Id.*).

Plaintiff failed to respond to the Show Cause Order, even though the Court *sua sponte* extended Plaintiff's time period to respond until April 20, 2012. The Court expressly warned Plaintiff in its last Order that, if Plaintiff continued to fail to provide sufficiently specific identifying information through which the U.S. Marshal could perfect service, the Court would recommend dismissal of the additional two parole officers based upon Plaintiff's failure of service. (Doc. 23).

On April 6, 2012, Plaintiff filed a response to the Court's prior "show cause" order, urging this Court not to dismiss the two parole officers who accompanied Defendant Matulavich. Plaintiff argues that the Court should not dismiss the unserved officers because as of the date he filed his lawsuit, he identified the workplace of each of the three parole officers, and has since identified the officers originally known only as "Amanda" and "Kevin" by their actual names, Amanda Souders and Derek Leverette. In fact, Plaintiff recently moved to file an amended complaint solely for the purpose of correctly identifying the two additional parole officers. (Doc. 37).

Defendants oppose Plaintiff's motion on grounds that the proposed amendment would be futile and would not survive a motion to dismiss. (Doc. 39 at 5). The Court agrees, to the extent that the same grounds asserted by Defendant Matulavich in his

pending motion for summary judgment apply equally to the additional two parole officers.

In addition, Defendants continue to seek dismissal of the unserved officers on grounds that, since learning identifying information concerning these two parole officers on March 8, 2012, Plaintiff has taken no affirmative steps to serve either parole officer. Plaintiff filed this lawsuit more than a year ago; therefore, the 120 day time limit for perfecting service established in Rule 4(m) has long expired.   Plaintiff has known the actual identity of both parole officers since March 8, 2012, but has never completed new summons forms with full identifying information through which the U.S. Marshal could effect service on Plaintiff's behalf.  Based upon the continued failure of Plaintiff to perfect service on these two Defendants, as well as Plaintiff's failure to comply with the Court's extensions of time for doing so, the motion to dismiss (Doc. 34) should be granted. *See* Rule 41(b).  Dismissal of the two unserved parole officers is also appropriate under Rule 4(m).

Given that both officers would be entitled to summary judgment had they been properly served in this case, and/or that any amendment of the complaint or attempt to serve them at this late date would be futile, the undersigned recommends that dismissal of all claims against the additional two parole officers be entered with prejudice.

### III. Conclusion and Recommendations

For the reasons stated herein, **IT IS RECOMMENDED THAT** Defendant Matulavich's motion for summary judgment (Doc. 21) and the unserved Defendants' motion to dismiss (Doc. 34) be **GRANTED**, that all claims against all Defendants be dismissed with prejudice and that Plaintiff's motion for summary judgment and motion to file an amended complaint (Docs. 27, 37) be **DENIED**.  As no matters remain pending, this case should be

**CLOSED.**

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KEON BLACKSHEAR,                                    Case No. 1:11-cv-212

        Plaintiff,                                    Barrett, J.
                                                   Bowman, M.J.
   v.

CINCINNATI ADULT PAROLE AUTHORITY, et al.,

        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).